COLLINS (GARDNER v.). See Case No. 5,223.

## Case No. 3,013.

### COLLINS v. GRAY et al.

[8 Blatchf. 483;[1] 4 N. B. R. 631.]

Circuit Court, N. D. New York. June 20, 1871.

PREFERENCE BY BANKRUPT—RECOVERY BY ASSIGNEE.

1. A preference to a creditor, to be void under either the 35th or the 39th section of the bankruptcy act [of 1867 (14 Stat. 534, 536)], must be made within four months before the filing of the petition in bankruptcy.

2. The general language of the 39th section in regard to the recovering back property by the assignee, must be construed in connection with the specific language of the 35th section, prescribing a four months' limitation to proceedings in respect to preferences to creditors; and there is, in fact, no inconsistency between them.

3. Under the circumstances of this case, the bill filed by the assignee in bankruptcy was dismissed, without costs.

[Cited in Cookingham v. Ferguson, Case No. 3,182.]

[In equity. Bill by George K. Collins, assignee in bankruptcy of Frank E. Gray, against Justus Gray and the said Frank E. Gray to set aside transfers by the bankrupt alleged to be in fraud of the bankrupt act.]

William C. Ruger, for plaintiff.
Silas L. Snyder, for defendants.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

WOODRUFF, Circuit Judge. If the transfers sought to be set aside by the bill in this suit, which were made by the bankrupt to his father Justus Gray, were made with intent to hinder, defraud or delay the creditors of the latter, or with a view to prevent the application of the property transferred to the payment of his debts, or its coming to the possession of an assignee in bankruptcy for distribution to his creditors, or if such transfers were fraudulent as against creditors, upon the general principles governing the subject, then the assignee would be entitled to have the transfers declared void, and to recover the property from the defendant Justus Gray. But the proofs fail to satisfy me that the transfers were so made, or were, in that sense, fraudulent.

It is in some doubt, upon the proofs, whether, at the time when the transfers were made, Frank E. Gray, the bankrupt, believed, or had reason to believe, he was insolvent, and in still greater doubt, whether the father, Justus Gray, or his agent in the transaction, Martin S. Gray, either knew or believed, or had reasonable cause to believe, that Frank was insolvent at that time, and that the transfers were made in fraud of the provisions of the bankrupt act. Upon all the proofs, however, I should feel compelled to infer, that, at that time, they all acted under an apprehension that the money due to the father Justus Gray was insecure, and that, unless its recovery was secured by some transfer of property or security thereon, there was danger that it would be lost. This danger arose from the evident failure of Frank to manage his affairs successfully, and the evidence that his debts were increasing, and that he was in want of more money to carry on his business. Belief of this made the father and his agent unwilling to lend Frank more money, and created a desire to secure what was then due.

But, assuming that Frank was, in fact, insolvent, and that his father and brother had reasonable cause so to believe, I think the proof fails to show that they acted dishonestly in the matter, or that there was any design, purpose or intent, except to secure payment of what was justly due. Transactions of this sort between near relatives are to be closely scrutinized, because it is among relatives that arrangements are more frequently made to cover up and conceal property for the future benefit of insolvent debtors, or their families. Nevertheless, relationship of the parties is not, per se, evidence of fraud, nor should the kind and liberal treatment of a son by a father deprive the latter of a just view of his actual rights. The most favorable view to the plaintiff which, I think, can be justly taken of the transaction in question, is, that, the father having, from time to time, assisted his son, and finding that he did not appear to prosper, but was applying for still more money, became desirous of securing what was due,

and the transfers in question were made and accepted in satisfaction of the then actual indebtedness. In view of the right to occupy the hotel for one year thereafter, without paying rent, the consideration of the transfer was not inadequate, so as to raise any presumption of want of entire good faith.

Taking the transaction as a giving of preference to the father as a creditor, while the debtor was insolvent, or in contemplation of insolvency, and assuming that the father had reasonable cause to believe that his son was insolvent, the case exhibits no features but those described in the first clause of section 35 of the bankrupt act. By that clause, if such a transaction be made within four months before the filing of the petition whereon the debtor is declared bankrupt, the same is declared void, but not otherwise. Although the bankrupt law aims at an equal distribution of all the property of a debtor among his creditors, from the time he becomes insolvent or contemplates insolvency, and is intended to disallow preferences given by a debtor to favored creditors, it goes no further, when preference alone is the subject of complaint, than to avoid such as are given within four months before the filing of the petition. If, in all other respects, the transfer is free from fraud or illegality, the law allows no attack to be made upon it after four months have elapsed. On this point, the clause of the 35th section, above referred to, is special and specific; and, although, on a cursory perusal, section 39 seems to give a longer time within which to impeach such transfer, I concur in the decisions which hold that the 39th section must be construed in subordination to the specific language of the clause referred to, which defines the precise effect of an honest preference given to a creditor by his debtor, though insolvent. Hubbard v. Allaire Works [Case No. 6,814]; Bean v. Brookmire [Id. 1,168]. To hold that, under the 39th section, a transfer or conveyance giving a preference to a creditor is void, if made within six months before petition filed, and thereupon the assignee may recover back the property, is to render the specific provisions of the first clause of the 35th section wholly nugatory and inoperative. It is the duty of the court to so construe a statute that every part of it may have effect, if that can be done. There is, in fact, no necessary inconsistency between the two. The 39th section defines and declares the various acts which shall be deemed "acts of bankruptcy," and among them, the giving, by an insolvent debtor, of a preference to his creditor; and it authorizes an adjudication declaring one who is guilty of any one of the several acts a bankrupt, if the petition is filed within six months after the commission of the act. It is to this precise point that the limitation of six months in the 39th section is addressed. If a creditor seeks a decree adjudging his debtor a bankrupt, he must petition therefor within six months after the act of bankruptcy is committed; and the act of bankruptcy alleged may be any one of the numerous causes specified in the section. So far, there is nothing whatever inconsistent with the 35th section; for, whether the act of bankruptcy be absconding with intent to defraud creditors, or conveying property with intent to delay, defraud or hinder creditors, or giving a preference, when insolvent, to one or more creditors, in either case, if, within six months, a creditor file a petition, the debtor must be decreed a bankrupt. This may well be held to be the sole purpose for which the six months' limitation is introduced into this section, namely, to limit the time within which creditors must proceed upon an alleged act of bankruptcy, by filing their petition, if they would obtain a compulsory decree. They must file their petition within six months after the act.

The residue of the section does not, in terms, carry the six months into its operation. True, if the debtor is decreed bankrupt, the assignee may recover back the money, or other property, paid, conveyed, &c., contrary to this act; but, conveyed when? or paid when? Suppose the act of bankruptcy alleged in the petition, and on which the debtor is adjudged bankrupt, is a fraudulent suspension of payment for more than fourteen days—how far back can the assignee go to avoid transfers of property intended to give a preference in contemplation of insolvency? The answer to this question cannot be found in the previous clause of the section. It must be sought in the 35th section; and, by that section, preferences given to creditors by insolvent debtors within four months before the filing of the petition are void, and the property may be recovered back. The concluding sentence of section 39 is to be read and understood with reference to the previous provisions of the act, and will, therefore, be construed, in the particular now in question, just as it would if the words, "subject to the limitations and provisions of the thirty-fifth section," had been added thereto or inserted therein. In this view, the two sections are in entire harmony; and it is the duty of the court not to construe the latter as an abrogation of the former, when they can be so harmonized. The bill of complaint herein must be dismissed. But the circumstances of the case, the somewhat uncertain import of the provisions of the statute, and the doubt of the bona fides of the transactions, arising from the proceedings supplementary to execution and the examination before the register, made it reasonable that the assignee should file the bill, and the dismissal thereof should be without costs to either party.